NASSER, ET AL. *v.* STAHL, ET AL.

[No. 18,543. Filed May 16, 1956. Rehearing denied June 26, 1956. Transfer denied September 25, 1956.]

710

*N. George Nasser, Chaney & Wood, Beuna Chaney,* and *Bert F. Wood,* of Terre Haute, for appellants.

*Wiley E. Hosier,* of Terre Haute, for appellee.

PFAFF, P. J.—On May 26, 1952, the Surveyor of Vigo County, Indiana, made an official survey of certain property in the City of Terre Haute, Indiana, at the request of appellants and pursuant to the following notice served upon the appellees, Charlotte Stahl, also referred to herein as plaintiff, and Anna Walker, to-wit:

"You are hereby notified that on the 26th day of May, 1952, Albert J. Nasser and Cecilia Nasser will have the county surveyor or his lawful deputy to establish, perpetuate, or relocate the corners and lines bounding my lands, consisting of parts of Lot Five (5) in Ann Baum's Subdivision of Out Lot 33 of the original out lots of the Town, now City of Terre Haute, described as follows: Commencing on the East line of Fourth Street 29 feet north of the South line of said Lot 5, thence North along said line of Fourth street 36 feet, thence east to the East line of said lot, thence South 36 feet, thence West to place of beginning, in Vigo County, Indiana."

On August 22, 1952, said Charlotte Stahl appealed from said survey by filing her verified complaint in the Vigo Circuit Court and causing a copy thereof to be delivered to the Surveyor of Vigo County.

The sufficiency of the complaint is not questioned and only its substance will be given. It charges that plaintiff complains of, excepts to and appeals from the survey heretofore mentioned and asked that it be declared void, illegal and of no effect for reasons hereinafter set out, including the following: The Ann Baum Subdivision was platted and recorded on May 15, 1851. Many owners of lots in said subdivision have the descriptions of their lots beginning at the southwest corner of said subdivision. The original survey of the entire subdivision is founded upon, based upon, and is dependent upon the present location of the southwest corner and the south boundary line of such subdivision and the lines and corners established and fixed in the original survey and platting. All owners of land in said subdivision are concerned and vitally affected by a relocation of the southwest corner and the south boundary line, and such owners were not served with the required statutory notice, nor did they give their consent and approval to said purported survey, and hence such survey is invalid. The survey made on May 26, 1952, changed the southwest corner to a new location and the boundaries of the property in such subdivision are thereby changed. The south line and the southwest corner of said subdivision have been fixed and established for more than a century and any change should be held illegal. By reason of the purported relocation of the southwest corner, which corner borders on Fouth and Crawford Streets, in the City of Terre Haute, the City is a necessary party to this suit and is interested and concerned in a relocation of said southwest corner and the south

boundary line of said subdivision, and the City has not been notified nor given its consent to the purported survey. The relocation of said corner and line will interfere with the prescriptive rights held by the owners of property in said subdivision.

In rhetorical paragraph 8 of plaintiff's complaint she claims title to the particular strip of land in question by adverse possession and estoppel. Said paragraph alleges in substance that plaintiff's husband, Fred Stahl, and his predecessors in ownership of the property located at 612 South Fourth Street in the City of Terre Haute were members of the same family unit, and that such property was owned by one or the other of the parents of said Fred Stahl from whom she inherited the same since 1883. That such ownership covers a period of almost 70 years, or since the purchase of the parents in 1883; that during said period the boundaries have been marked by buildings, fences, cement drives and walks, hedges and other landmarks fixing the boundary lines definitely with no hint or suggestion of change. The appellants purchased the adjoining lot and property to the Fred Stahl lot and property, well knowing such fences, buildings, walks and hedges were marks designating the boundary line between said lots, or the line designating the respective parties' interest. The appellants lived in their said property for almost ten years raising no question as to boundary lines, paid their proportionate share towards the erection of a new fence where the old fence had marked the dividing line, and otherwise recognized his hedge and fence as the boundary line between the two properties. The appellants are estopped by their own acts from laying claims to ownership of plaintiff's property and plaintiff's rights cannot be defeated by the present attempted survey.

In rhetorical paragraph 9 plaintiff asks that the Surveyor of Vigo County file with the Clerk of the Circuit Court, all his files, papers and field notes bearing upon the survey.

On February 25, 1953, and before any other pleadings were filed in said cause, the plaintiff filed her motion for change of venue from the county, which was granted and the cause was venued to the Sullivan Circuit Court. Thereafter appellants, defendants below, filed their motion to dismiss the appeal, which was overruled and the Surveyor was ordered to file his papers and field notes, on or before June 25, 1953. On June 26, 1953, the day the cause had been set for trial, appellants filed their answer of special denial to the complaint. On the same date the Surveyor filed a transcript of his papers and field notes from the Vigo Circuit Court on the survey in the trial court.

There was a trial by the court without the intervention of a jury and a general finding for the appellee, Charlotte Stahl, and against appellants, that the boundary line and corners thereof established by the Surveyor of Vigo County was not the true boundary line; that the true boundary line between said lots is 2.72 feet south of the boundary line located by said Surveyor and judgment was entered for appellee in accordance with the general finding of the court. The judgment reads as follows:

"It is therefore ordered, adjudged and decreed by the court that the true boundary line between the lands of the plaintiff, Charlotte Stahl, and the defendants, Albert J. Nasser and Cecilia Nasser, is the North side of the North wall of the residence building on the real estate of the said defendants, Albert J. Nasser and Cecilia Nasser and line extending due east from the Northeast corner of said building, and is 2.72 feet South of boundary line located by said Surveyor, and that the line sur-

veyed by the defendant, Charles C. Modessit, Surveyor of Vigo County, Indiana, is not the true line between said property and the Surveyor of Vigo County, Indiana, is hereby ordered and directed to locate and perpetuate such true line and the corners thereof as found by the court by depositing in the proper places, below freezing point, a stone or other durable materials and marker and make entry thereof in his field notes as required by law."

Appellants thereafter filed a motion for new trial which was overruled.

The errors assigned and relied on for reversal are:

1. The court below had no jurisdiction of the subject matter of this action.

2. The court erred in assuming jurisdiction over the subject matter of this action.

3. The court erred in overruling the motion of appellants to dismiss the appeal from the surveys made by the Surveyor of Vigo County, Indiana.

4. The court erred in overruling appellants' motion for a new trial.

Specifications 1, 2 and 3 are certain grounds of the motion for new trial, which are based upon the granting of the change of venue insofar as they depend upon the alleged failure of plaintiff to perfect her appeal, are so interwoven as to warrant their joint treatment in this opinion.

The proceedings herein are brought under §49-3311, §49-3313 and §49-3314, Burns' Indiana Stat., 1951 Repl. In general content §49-3311 provides for the official survey; §49-3313 provides for an appeal to the Circuit Court; and §49-3314 provides for a determination by the court of the true boundary line and its permanent establishment in the event the court finds against the survey appealed from.

Other than the time for taking the appeal, and that the same may be taken without bond, no procedure is provided for perfecting such appeal. The general rule in such cases is to look to existing regulations for appeals under similar circumstances. Until the enactment of §1 of Ch. 98, Acts of 1901, p. 160, being §49-3314, Burns' Indiana Stat., *supra*, the procedure applicable to appeals from a Justice of the Peace to the Circuit Court was generally followed. *Rosenmeier* v. *Mahrenholz* (1913), 179 Ind. 467, 470, 101 N. E. 721; *Cleveland* v. *Obenchain* (1883), 89 Ind. 274.

In *Rosenmeier* v. *Mahrenholz, supra,* our Supreme Court, in part, said:

> "Under the law as it was formerly when the circuit court had no other duty than to try the question whether the survey was correct and if found incorrect to order a resurvey, it was held by this court that the appeal was tried in the circuit court on the field notes and original papers relating to the survey in the same manner as appeals from justices of the peace are tried on the original papers, and that pleadings were unnecessary and inappropriate. §9518, Burns' 1908, §5955, R. S. 1881; *Cleveland* v. *Obenchain* (1883), 89 Ind. 274. By a later act of the Legislature (§9519, Burns' 1908, Acts 1901, p. 160), in addition to determining the correctness of the survey appealed from, the circuit court is required to find and determine the true boundary."

Under the record showing, viz., the filing of the complaint in the Vigo Circuit Court attacking the correctness of the survey and setting up a claim of adverse title to the strip of land in controversy with a request upon the Surveyor to file his papers and field notes with the Clerk of the Vigo Circuit Court and the delivery of a copy of such complaint

to the Surveyor; and the further showing that on September 3, 1952, the surveyor filed his return in the Vigo Circuit Court of his survey attaching thereto a copy of the plaintiff's complaint as shown by plaintiff's Exhibit "A" introduced at the trial of this cause, there was a substantial compliance with procedural requirements. This court therefore holds that the appeal thus taken was sufficient to vest jurisdiction in the Vigo Circuit Court.

Specifications 1, 2 and 4 of appellants' motion for new trial contend that the court erred in sustaining plaintiff's motion for a change of venue from the county and in overruling their motion filed in the Vigo Circuit Court to vacate and set aside the order granting such change, alleging that the court had no jurisdiction of the subject matter because plaintiff had failed to perfect her appeal within ninety days from the date of survey; that the motion was not filed at least ten days before March 4, 1953, the time the cause was set for trial; and for the further reason that plaintiff did not fulfill the requirements of the statute, §1 of Ch. 233, Acts of 1951, p. 674, being §2-1438, Burns' 1946 Repl., Suppl. 1955.

Appellee herein has not questioned the sufficiency of the alleged grounds to present the questions urged and they will be treated herein as adequate for such purpose. The first two grounds are argued together as involving substantially the same question.

This court has considered the objection that the appeal was not duly perfected, and under the conclusions reached appellants' objection to the granting of the change of venue on that ground is not well taken.

As to the further grounds alleged as irregularities in the preparation and filing of the motion for change of venue, the record shows that the complaint was filed in

the Vigo Circuit Court on September 22, 1952; that after two or more settings for trial the court, on motion of defendants, set the cause for trial on March 4, 1953. At that time the cause was not ready for trial. The issues were not closed until June 26, 1953, when appellants filed their answer to the complaint. Plaintiff filed her motion for change of venue based upon proper statutory grounds on February 25, 1953, and alleging therein her reasons for not filing it sooner and that it was filed upon discovery of existing ground invoking the discretion of the trial court. On the same day the court granted the motion without objection. The record shows that the case was finally set for trial on June 26, 1953, and that it was tried on that date.

Statutes are to receive a reasonable construction to avoid an absurdity where it can be done without destroying their purpose. The ostensible purpose of a statute or rule limiting time for taking a change of venue is to prevent unnecessary delay in the trial of a cause.

If it were necessary to a proper disposition of a question this court would be inclined to construe "the setting of a case for trial" as intending a trial date at which the cause was ripe for trial, and is now provided by Rule 1-12B of the Supreme Court of Indiana, adopted September 21, 1955, and effective January 2, 1956, and which now supersedes §2-1438, *supra*.

The following language of such rule emphasizes the proper construction of the 1951 Act, to-wit:

> "Any such application for change of venue shall be filed within ten days after the issues are first closed on the merits, or if the issues are closed without answer by operation of law . . ."

However, as the questions at issue may be adequately disposed of on other grounds, and the instant statute

is now obsolete, no opinion is expressed herein as to how the statute should be construed.

As heretofore stated, the trial court was called upon to exercise its discretion and it granted the motion for change of venue. The motion to vacate and set aside the order does not claim any abuse of discretion in granting the change, and the ruling thereon would be harmless for the further reason that the motion was filed in the Vigo Circuit Court after the change of venue had been granted. The effect of the granting of such motion was to divest that court of any further jurisdiction. *Moore* v. *American Nat. Bank at Indianapolis* (1944), 114 Ind. App. 551, 556, 52 N. E. 2d 513.

No reversible error is shown in the granting of the change of venue.

Appellants claim error in the admission of certain testimony of the plaintiff on direct examination over objection. Appellants have not given any reference to the page and line of the record where the ruling may be found and we find no record to support this ground of their motion for new trial. In any event since the principal ground of their objection relates to payment of taxes on the strip of land in controversy, the ruling would be harmless in view of our conclusion reached on that phase of the case.

Appellants contend that the decision of the court is not sustained by sufficient evidence and is contrary to law. Both questions are argued together. The court does not believe that any extended discussion of the evidence is necessary. Appellants' principal argument is based upon their construction of the 1927 Act, Acts 1927, Ch. 42, §1, p. 119, being §3-1314, Burns' Indiana Stat., 1946 Repl. In short they contend that the payment of taxes by the plaintiff un-

der the description on the tax duplicates was not a payment by her of the taxes on the strip of land in controversy within the meaning of the 1927 Act.

This contention is disposed of in the recent case of *Echterling* v. *Kalvaitis* (1955), 235 Ind. 141, 126 N. E. 2d 573, 575. The following language of the opinion is pertinent here. The court, speaking through Judge Levine, said:

> "The court takes judicial knowledge of the fact that complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers. They are usually sketchy and inaccurate. 2 C. J. S., Adverse Possession, §71(2), p. 588; *Hawley* v. *Zigerly* (1893), 135 Ind. 248, 34 N. E. 219; *Marley* v. *State ex rel. Chenoweth* (1897), 147 Ind. 145, 46 N. E. 466.
>
> "It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant."

Appellants do not seriously contend that the evidence of adverse possession of the strip of land or real estate was not shown if the period from 1927 to the time of the bringing of this action were considered, during all of which time the plaintiff and her predecessors in title occupied and used the strip in question.

There is evidence tending to show that the survey made on May 26, 1952, was erroneous on the ground that it did not commence at the point where the original survey of the plat in question commenced and for the further reason that it did

not establish a true boundary line between the property of the plaintiff and that of the appellants.

There is substantial evidence in the record to show that appellee Stahl and her predecessors in title had continuous, open and adverse possession of the land up to the fence line which had been the same for a period of more than twenty years so as to establish adverse possession and create a title in appellee by operation of law, and sufficient to extinguish appellants' paper title. *Echterling* v. *Kalvaitis, supra,* with cases cited.

The decision of the court was not contrary to law. Finding no reversible error in the record, the judgment is affirmed.

NOTE.—Reported in 134 N. E. 2d 567.