PENN CENTRAL TRANSPORTATION COMPANY, GEORGE P. BAKER, RICHARD C. BOND AND JARVIS LANGDON, JR., AS TRUSTEES *v.* GLENN MARTIN, MARGURITE V. WOLF.

[No. 3-175A11. Filed September 1, 1976. Rehearing denied October 19, 1976. Transfer denied March 23, 1977.]

*Owen W. Crumpacker, Richard A. Miller,* of Hammond, for appellants.

*Gilbert F. Blackmun, Leonard M. Holajter, Friedrich, Bomberger, Tweedle & Blackmun,* of Hammond, for appellees.

HOFFMAN, J.—Plaintiff-appellee Glenn Martin commenced this action in the trial court against defendants-appellants

Penn Central Transportation Company and George P. Baker, Richard C. Bond and Jarvis Langdon, Jr., trustees of the property of the Penn Central Transportation Company, seeking to quiet title to certain real estate located in Lake County, Indiana. Appellee Margurite V. Wolf, daughter of appellee Martin, was granted leave to join the action as a party-plaintiff following a conveyance by appellee Martin to himself and Margurite as joint tenants with right of survivorship. Following trial to the court and arguments of counsel, the trial court entered a judgment quieting title to such real estate in appellees and extinguishing all rights of appellants in such real estate. Thereafter, appellants' motion to correct errors was overruled, and this appeal was perfected.

The facts most favorable to appellees as revealed by the record establish that in 1933 Glenn Martin and his family rented a four-room frame house located at 2614—167th Street in Hammond, Indiana. On the south side of the house was an outside toilet and a shed. In 1936, the owner added a room and a bathroom on the south side of the house. In 1937, appellee Martin contracted to purchase the house for $1,250. Upon payment of the final installment, Glenn Martin and his wife Cassander Martin received a warranty deed on December 28, 1942, from McMannomy Coffing and Elizabeth W. Coffing, husband and wife. Such deed described the property as follows:

"The West 31.28 feet of the East 63.08 feet of Lot 'A' measured along the North line of said Lot 'A', as marked and laid down on the recorded plat of the Subdivision of Lot 'A' of Midway Gardens, Hammond, Indiana, as the same appears of record in Plat Book 17, Page 17, in the Recorder's Office of Lake County, Indiana."

The Martins received a deed but did not receive any other title papers or abstract.

In 1940, appellee Martin enlarged the shed and converted it into a garage. Since that time, he has always parked his car inside the garage. In 1952, appellee Martin improved the driveway running along the west side of the house from 167th

Street to the garage. The driveway consisted of sand, cinders and slag stone. The cinders were put on the driveway in 1936. From 1933 until the time of the hearing, no one other than Martin and his immediate family occupied, used or maintained the house or garage. Since 1942 Martin and his wife received and paid the taxes on the property according to the tax duplicate.

Appellee Martin had a survey made of the property in 1973 after his wife's death. It was then appellee Martin first learned that garage and part of the house were located on appellants' property.

The West 31.28 feet of the East 63.08 feet of Lot "A" as laid out on the recorded plat of the subdivision of Lot "A" of Midway Gardens was actually a trapezoidal parcel of land. The Torrenga Engineering plat of survey depicted the real estate as containing 31.28 feet of frontage along 167th Street with the depth on the west side of the lot as approximately 42.88 feet and the depth on the east side of the lot approximately 85 feet. Consequently, part of the house and the entire garage encroached on appellants' property.

Appellee then filed his complaint seeking to quiet title to a rectangular parcel of real estate located at 2614—167th Street in Hammond, Indiana, which parcel is 31.28 feet wide along the 167th Street frontage and 100 feet long.

In order to establish title by adverse possession, Martin had to show that such possession was (1) actual, (2) visible, (3) open and notorious, (4) exclusive, (5) under claim of ownership, (6) hostile, and (7) continuous for the statutory period. *Longabaugh* v. *Johnson* (1975), 163 Ind. App. 108, 321 N.E.2d 865, 868 (transfer denied) ; *Cooper* v. *Tarpley* (1942), 112 Ind. App. 1, 7, 41 N.E.2d 640, 642; *Abel* v. *Love* (1924), 81 Ind. App. 328, 336, 143 N.E. 515. In addition, an adverse possessor must show that he paid all taxes falling due on the land during the period he claims to have possessed such land adversely. IC 1971, 32-1-20-1 (Burns Code Ed.).

On appeal, appellants first contend that there was insufficient evidence adduced at trial that appellees paid taxes on the subject real estate. IC 1971, 32-1-20-1, *supra,* provides as follows:

"Hereafter in any suit to establish title to lands or real estate no possession thereof shall be deemed adverse to the owner in such manner as to establish title or rights in and to such land or real estate unless such adverse possessor or claimant shall have paid and discharged all taxes and special assessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely: Provided, however, That nothing in this act [section] shall relieve any adverse possessor or claimant from proving all the elements of title by adverse possession now required by law."

Appellants contend that appellees stipulated that they did not pay taxes on the real estate on which appellants are the record owner and to which appellees are claiming title by adverse possession. Appellees admit that they did not pay the real estate taxes on such land, but contend that they have paid taxes on the improvements located on such land and that this is sufficient to satisfy the statute.

In *Echterling et ux.* v. *Kalvaitis et ux.* (1955), 235 Ind. 141, at 146-47, 126 N.E.2d 573, at 575-76, our Supreme Court stated:

"The court takes judicial knowledge of the fact that complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers. They are usually sketchy and inaccurate. 2 C.J.S., Adverse Possession, § 71 (2), p. 588; *Hawley et al.* v. *Zigerly et al.* (1893), 135 Ind. 248, 34 N.E. 219; *Marley* v. *State ex rel. Chenoweth, Auditor of Martin County* (1897), 147 Ind. 145, 46 N.E. 466.

"It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant. An

example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes."

In the case at bar, Jean Chicki, a clerk in the North Township Assessor's office who computes the assessed valuation of buildings and land, testified that the assessor's survey sheet for 1962 and the reassessment survey sheet in 1969 discloses that the real estate of which appellees were the record owner was assessed with a one-story frame house and a garage, that all records before 1962 were destroyed, but that there was no evidence the dwelling and garage had ever been assessed against any other parcel of real estate. There was further testimony that Martin paid all the tax statements received since 1952 and the paid tax receipts for 1966 through 1969 indicate that the assessed valuation on the tax receipts correspond to the assessed valuation in the survey sheets.

It must therefore be concluded that there was sufficient evidence to show that appellees paid the taxes on the portion of real estate to which they had record title and for the improvements which were partially located on the adjoining land. This evidence is sufficient to satisfy the requirement of IC 1971, 32-1-20-1, *supra,* as construed by our Supreme Court in *Echterling et ux.* v. *Kalvaitis et ux., supra.*

Appellants next contend that there was insufficient evidence to indicate that appellees possessed the land under claim of ownership.

In order to acquire title by adverse possession, it is not necessary that possession be under color of title. *May* v. *Dobbins* (1906), 166 Ind. 331, 77 N.E. 353; *Cooper* v. *Tarpley, supra; McCurdy* v. *Rich* (1921), 76 Ind. App. 469, 471, 132 N.E. 315, 316. It is sufficient if

the adverse claimant occupies the land under a claim of right. Thus, title by adverse possession can be established by entering upon and occupying land with the intent to hold the land as one's own. *McCurdy* v. *Rich, supra.* The absence of color of title affects only the extent of possession. Title under a claim of right can only be asserted against the land actually occupied by the adverse claimant. *Cooper* v. *Tarpley, supra; McCurdy* v. *Rich, supra.*

A claim of right may be inferred in favor of the party in possession if such party places permanent structures upon the land of another and thereafter uses such land and structure in the same manner that an owner ordinarily uses his land. *Swanson* v. *New York, etc. R. Co.* (1925), 83 Ind. App. 580, 149 N.E. 353; *Abel* v. *Love, supra* (1924), 81 Ind. App. 328, 337, 143 N.E. 515, 518. The evidence, as hereinabove stated, discloses that appellees alone occupied the addition to the house, and used, improved and maintained the garage and driveway. It further discloses that appellee Martin mowed the grass to the west and south of the house during this period. It must therefore be concluded that the trial court did not err in finding that appellees took possession under a claim of ownership.

Appellants' final contention is that there is insufficient evidence that appellees claimed or intended to claim any real estate other than that to which they were the record owner. However, appellees' conduct in occupying the dwelling and in using and improving the garage and driveway is sufficient to demonstrate an intent to claim such land. It is irrelevant that such possession was without intent to possess land of another. *Cooper* v. *Tarpley, supra.*

Having found no reversible error, the judgment of the trial court must be affirmed.

Affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 353 N.E.2d 474.